Tbe following is tbe opinion of tbe court below:
Cullen, J.
Despite tbe exhaustive arguments of plaintiff’s counsel, I still think that tbe agreement of tbe Manhattan Elevated Railroad Company ran only to the-New York Elevated Rahway Company and-not to tbe individual stockholders of tbe latter company. In tbe various litigations arising out of the leases between these companies tbe decisions are uniform in support of this construction. Tbe plaintiff, therefore, has no contract for a dividend with either defendant company. In this respect tbe case wholly differs from that of Boardman v. Lake Shore, etc., Railroad, 84 N. Y., 157. In that case there was an express agreement to pay tbe dividend and tbe suit was brought on that agreement. In tbe view taken of tbe lease of tbe New York Company’s road, there is no such element in this case. This action, therefore, cannot be maintained as one to recover dividends, except to tbe extent that dividends have been declared by tbe company, to wit, at tbe rate of six per cent, yearly.
But tbe plaintiff contends that, waiving tbe claim that there was a direct guaranty of dividend on the stock, be is entitled to compel tbe enforcement of tbe contract by tbe Manhattan Company, tbe New York Company having, after demand made by him, refused to enforce its claim for the rent reserved in tbe original lease. This claim was .certainly litigated on tbe trial, and, I think, is within tbe pleadings. Tbe right of tbe New York Company to collect from tbe Manhattan Company tbe reserved rent of 1650,000, during tbe period over which plaintiff’s claim extends, depends upon tbe agreement of October, 1881, modifying tbe terms of tbe original lease of tbe road. It is contended that this modification is invalid: First, because tbe agreement to that effect was made by tbe directors without tbe consent of tbe stockholders ; second, because it was made in fraud of tbe interests of the company. In this action tbe parties put in evidence tbe record and judgment in the action brought in tbe Common Fleas of tbe City of New York by tbe Metropolitan Railroad Company against the defendants in this suit. In that action it was adjudged that tbe agreements of October, 1881,-were null and void, and tbe same were set aside as to all the parties thereto. The several companies then became restored to their contract relations under tbe leases of May, 1879.
*61 The plaintiff claims that by the avoidance of the October agreements the New York Company became entitled to recover of the Manhattan Company the rent originally reserved during the whole period the road of the former company was held by the latter. This proposition is the foundation of the plaintiff’s contention. I think it is erroneous. The judgment in the Common Pleas establishes that the agreement of October, 1881, was voidable, not that it was void; and such a voidance was made at the election of the Metropolitan Company only; the New Company asserting the validity of the agreement. The question of the validity of the execution of that agreement by the New York Company was not and could not be passed on in that action. This judgment there would have necessarily been the same, had all the New York Company stockholders assented to the agreement. From the time of that judgment the agreement became inoperative between all the parties; but, as between the two defendants in the action, in my opinion, only because the assent of the Metropolitan Company to the proposed new rentals was an integral part of the consideration for the reduction of the rent on behalf of the New York Company. Until the rendition of that judgment, however, the. New York Company received the whole benefit of the agreement; and had the agreement been properly executed by the New York Company, plainly the New York Company could not have been heard to complain as long as the Manhattan Company had fully performed the covenants on its part. The judgment in the Common Pleas suit, therefore, of itself establishes no claim in favor of the New York Company for the amount of the reduction in the rentals. The principle, however, decided in that case, applies as well to the action of the New York Company as to that of the Metropolitan, therefore the act of the Directors of the New York Company was voidable. But it does not appear that such action has ever been avoided. The corporation has never elected so to do, nor has any stockholder brought an action for that purpose; on the contrary, the mass of the stockholders have acquiesced in it. As early as January 31, 1882, a majority of the stock of the New York Company had been acquired by the Manhattan Company under the terms of the modified agreement, and prior to the commencement of this action, 58,000 shares out of a total of 65,000. I do not say that the transfer of the majority of the stock of itself is sufficient substitute for the action of the stockholders at a regular meeting, nor even that a minority of the stockholders were under the absolute controll of the majority; but I think it clear that, if this agreement was voidable only, then, in the absence of fraud, until some one aggrieved — either the corporation or a stockholder — sought to avoid it, it was binding upon the parties. The case qf Kent v. Quicksilver Mining Co., 78 N. Y., 159, is a direct authority to that effect. This case differs *62 largely from that of the Metropolitan Company. There the action of the complaining stockholders was prompt and vigorous to avoid the alleged wrong. Here, while a small number of stockholders did not acquiesce in the modification of the lease, their dissent evidently was based on the claim that they had a direct contract with the Manhattan Company, which could not be avoided by action of their own corporation, and .not on the ground that the • directors could not, without the assent of the stockholders, act for that corporation.
On the argument it was claimed that the action of the New York Company directors was fraudulent, but I am not asked to find that fact by the plaintiff’s requests. There is no evidence before me in the subject matter, except the findings in the Common Pleas action, and a statement of the holdings of the directors in the stock of the two companies. The evidence is wholly insufficient for' the purpose. Whatever criticism may be made as to the action of the Board of Metropolitan Directors in making the October agreement, those criticisms do not apply to the action of the New York directory. The directors of the latter company represented the substantial holdings of the stock. There were no common directors of the two companies. The lessee company at the time was insolvent. While the rent was reduced the New York Company would receive substantial benefit from the new agreement. The rent of the New York Company was thereafter to be first paid out of the joint earnings of both roads. True, the Manhattan Company also was benefited by the modification of the lease, but that does not necessarily show that the interest of the New York Company was sacrificed. In fact, the complaint of the Metropolitan Company was directed more against the advantages given by the October agreement to the New York Company, than to those given to the Manhattan Company. It is plain that such an agreement cannot be held fraudulent on its face without evidence to sustain the allegation. It follows that the New York Company had, at the time of the surrender of its road by the Manhattan Company, no valid claim against the latter company. It is therefore unnecessary for me to examine the validity of the release subsequently given. There was no wrong in the New York Company accepting the surrender of its road. As to the validity of the agreement by the New York Company, made subsequent to such surrender, to pay dividends in certain contingencies to the stockholders of the Manhattan Company, the validity of the lease to the Manhattan Company and the merger agreement, I express no opinion. I should be loth to say that the holders of a majority of the stock of a company can make a bargain with itself, if it should appear that such action was dictated by considerations of personal advantage to the stockholders, and such action was plainly prejudicial to the interests of the other stockholders. But these *63 questions do not arise in this case. If I were to pass on tbem it would be without legal effect.
Arnoux, Mitch Woodford, for app’lt; JE. B. Oowles, of counsel. Davies Mapallo, for respondent; A. J. Vandepoel, of counsel.
The demand of the plaintiff in the New York Company, which alone gives him the right to maintain this action, was made on May 22,1884. The only question that can be determined here is the existence of a claim of the New York Company against the Manhattan Company at that time. If the plaintiff is aggrieved by the subsequent action of his corporation, he must bring a direct suit for relief against it.
The complaint must be dismissed as against the Manhattan Railway Company with costs, and the plaintiff have judgment against the New York Company that it transfer its stock, and for the amounts of the dividends declared at the rate of 6 per cent, per annum, with costs.
Dykman, J.
The judgment in this action should be affirmed on the opinion of the court below.
BakNAEd, P. J., and Pratt, J., concur.